UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMES RAY,

                              Plaintiff,

            -v-

CHRISTINA RAY and JOHN DOE GUARNERIUS
ENTITIES # 1–20,

                           Defendants.

20 Civ. 6720 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Ames Ray ("Ames") brings here a constructive fraudulent conveyance claim under the New York Uniform Fraudulent Conveyance Act ("UFCA") and New York Debtor & Creditor Law ("DCL") § 273 against his ex-wife Christina Ray ("Christina") and John Doe Guarnerius Entities 1–20, hedge funds with which Christina has contractual relationships. Christina moves to dismiss the complaint as time-barred and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). She also moves for sanctions pursuant to Federal Rule of Civil Procedure 11. For the following reasons, the Court grants the motion to dismiss but denies the motion for sanctions.

I.      **Background**

A.      **Factual Background**[1]

Ames and Christina were married between 1972 and 1977, and thereafter maintained a business relationship. FAC ¶¶ 29–30. In 1993, Ames entered into a commodities-trading agreement with Christina under which she agreed to indemnify trading losses up to $350,000. *Id.* ¶ 2. When Ames incurred $500,000 in losses, Christina agreed to repay $384,388, with interest, but did not do so. *Id.* In 1998, Ames filed a breach of contract lawsuit (the "1998 Action") against Christina in New York State Supreme Court in Manhattan seeking damages for her failure to pay that debt. *Id.* ¶¶ 2, 41.

On February 8, 2009, the State Supreme Court granted summary judgment to Christina and dismissed the 1998 Action without prejudice. *Id.* ¶ 55. On March 20, 2008, Ames appealed. *Id.* ¶ 57. On April 7, 2009, the Appellate Division reversed the judgment and reinstated the complaint. *Id.*; *see Ray v. Ray*, 61 A.D.3d 442 (1st Dep't 2009). In 2017, a jury trial was held and a special verdict returned in Christina's favor on both counts. FAC ¶ 47. After that verdict, the State Supreme Court dismissed the 1998 Action and imposed sanctions against Ames for "frivolous conduct." *Ray v. Ray*, 180 A.D.3d 472, 474 (1st Dep't 2020). Ames then appealed that dismissal. And on February 11, 2020, the Appellate Division affirmed the dismissal of the first cause of action, relating to an allegation of a $590,000 debt, but found reversible error as to

---

[1] This factual account draws from the First Amended Complaint, Dkt. 11 ("FAC"). *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."). For the purpose of resolving the motion to dismiss under Rule 12(b)(6), the Court presumes all well-pled facts to be true and draws all reasonable inferences in favor of plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

the second, "pertaining to investment losses," and remanded that cause of action to the trial

court, where it currently awaits a new trial. *Id.* The Appellate Division also found that the trial

"court erred in imposing sanctions" and vacated the sanctions award. *Id.*

      Meanwhile, in April 2008, Christina obtained a mortgage on her co-op apartment for

$500,000. FAC ¶ 58. On April 24, 2008, while Ames's first appeal of the 1998 Action was

pending, Christina began transferring mortgage proceeds to JDG Entities, a hedge fund for which

she consulted. Those transfers continued until October 31, 2009, and totaled $420,000. *Id.*

¶ 62. The FAC alleges that JDG Entities had not given Christina fair value for the transfers, *id.*

¶ 76, and that as a result of the transfers, Christina was insolvent and lacked assets from which to

pay a money judgment in Ames's favor, had such resulted from the 1998 action. *Id.* ¶ 73.

    **B.**    **Previous Related Actions**

      **1.**    **The 2010 and 2014 Actions in New York State Supreme Court**

      In December 2010, also in New York State Supreme Court in Manhattan, Ames brought

the "2010 Action"—the first in a series of cases bringing fraudulent-conveyance claims against

Christina, all arising from the transfer of her mortgage proceeds.[2] In it, Ames brought claims

under DCL §§ 273-a and 276, alleging that Christina had mortgaged her apartment and

transferred the proceeds while the 1998 Action against her was pending, with the goal to make

herself insolvent and unable to pay debts arising from that action. *See Ray v. Ray*, 108 A.D.3d

449, 450–51 (1st Dep't 2013) (describing Ames's 2010 Complaint as "alleg[ing] that defendant

'fully mortgaged her co-op apartment,' her only significant asset, so as to make herself insolvent

---

[2] Ames appears to have filed but not pursued a previous similar action in New York State
Supreme Court. The Court thus treats the December 2010 action as the first in which Ames
alleged that Christina's transfers of mortgage proceeds were a fraudulent conveyance. Dkt. 7
("Def. MTD Mem.") at 4.

and avoid paying him money damages in the 1998 action"). Christina moved to dismiss the 2010 Action. The State Supreme Court dismissed that complaint "not on the merits but due to pleading defects." *Ray v. Ray*, 158 A.D.3d 578, 578 (1st Dep't 2018). Ames appealed to the Appellate Division, First Department. It affirmed the dismissal, finding that the trial court had properly "dismissed the claims based upon [DCL] § 273-a because there was no judgment against [Christina] when she refinanced the mortgage and she had prevailed on having the 1998 action dismissed. Although [Ames] filed a notice of appeal, there was no stay against [Christina] taking the steps that she took." *Ray*, 108 A.D.3d at 451. The First Department further found that Ames's claims under DCL § 276 had been properly dismissed because they "were not pleaded with the particularity required . . . to support a cause of action for actual intent to defraud." *Id.*

On April 23, 2014, Ames filed a second fraudulent-conveyance action (the "2014 Action"), again in New York State Supreme Court. Christina again moved to dismiss, and for sanctions against Ames for filing a frivolous complaint. The State Supreme Court granted both motions; on appeal, the Appellate Division affirmed the dismissal but reversed the imposition of sanctions. *Ray*, 158 A.D.3d at 579. The Appellate Division explained that "the complaint was correctly dismissed for failure to state a cause of action. The petition lacks the factual allegations and evidence required to support the contention that Christina Ray fraudulently transferred funds . . . in violation of Debtor and Creditor Law § 273, . . . [and] the complaint does not plead intent to defraud sufficiently to support a claim under DCL § 276." *Id.* at 578–79. But, rejecting an alternative ground for dismissal, it held that, because "the 2010 complaint [had been] dismissed not on the merits but due to pleading defects, . . . the [2014] complaint is not barred by the doctrines of res judicata or collateral estoppel." *Id.* The Appellate Division vacated the sanctions because the prior action had been dismissed for pleading infirmities, not on

4

the merits. *Id.* (citing *Omansky v. Lapidus & Smith, LLP*, 273 A.D.2d 110, 111 (1st Dep't 2000), which found an "award of sanctions, based on the motion court's erroneous belief that collateral estoppel and res judicata barred this action, should be vacated").

### 2. The 2018 Federal Court Action

On August 6, 2018, Ames filed another fraudulent-conveyance action (the "2018 Action"), this time in this District, under DCL §§ 273, 276, 276-1, and 275. *Ray v. Ray* ("*Ray III*"), No. 18 Civ. 7035 (GBD), 2019 WL 1649981, at *1 (S.D.N.Y. Mar. 28, 2019), *aff'd*, 799 F. App'x 29 (2d Cir. 2020) (summary order). There, Ames pled—as here—that Christina's fraudulent transfers or mortgage proceeds had occurred "between April 24, 2008 and October 31, 2009." *Id.* Christina moved to dismiss the claims as time-barred and for failure to state a claim. *Id.* at *3. She argued that the 2018 Action was untimely because fraudulent-conveyance claims are subject to a six-year statute of limitations, *see* N.Y. C.P.L.R. ("CPLR") § 213(8). Ames defended the action as timely under CPLR § 205(a) because he had filed it within six months of the First Department's affirmance in 2018 of the dismissal of the 2014 Action. *See* CPLR § 205(a) ("If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, . . . or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction . . . within six months after the termination . . .").

Judge Daniels, to whom the case was assigned, found the claims timely. *Ray III*, 2019 WL 1649981, at *3–4 ("The two actions also involve the same general allegations and operative facts . . . [and since] at least one of the same transactions alleged in the 2014 Action is also alleged in this action, CPLR § 205(a)'s same transaction or occurrence requirement is satisfied."

(quotations omitted)).  But he dismissed Ames's claims under Rule 12(b)(6), finding that Ames

had "failed to plead the elements of a claim" under DCL §§ 273, 275, and 276.  *Id.* at *6.[3]

In particular, as to DCL § 273, Judge Daniels held that Ames had "not allege[d] facts

sufficient to support an inference that the transfers at issue lacked fair consideration."  *Id.*  He

further held that Ames had "failed to allege facts sufficient to support an inference that Christina

was insolvent at the time of the transfers," as his complaint did "not provide a basis to infer that

she had no other assets."  *Id.* at *7.  He explained:

> Notwithstanding Plaintiff's allegations to the contrary, the debts alleged in the 1998
> Action are not probable liabilities.  "The mere existence of a contingent debt,
> without more, is insufficient to support a finding that such a debt represents a
> probable liability" where there is "no evidence as to the probability, at the time of
> the challenged conveyance, that the contingent liability would be imposed."

*Id.* at *8 (cleaned up) (quoting *Staten Island Sav. Bank v. Reddington*, 260 A.D.2d 365, 366

(2d Dep't 1999)).

Ames appealed, and on January 23, 2020, the Second Circuit affirmed.  *Ray*, 799 F.

App'x 29, 31.  It held that "Ames's failure to plead a lack of consideration forecloses his claims

under both §§ 273 and 275," and that because he had failed "to raise a strong inference of

Christina's intent to commit fraud," Ames had "failed to meet his burden under Rule 9(b) and,

consequently, to state a claim for fraudulent transfer under NYDCL § 276."  *Id.* 31–33.  As to

§ 273, the Circuit held that Ames "failed to allege facts supporting the absence of fair

consideration," in particular because his complaint "fail[ed] to allege—even superficially—that

Christina received nothing in exchange for the transfers."  *Id.*

---

[3] Christina also argued that she had not been served within six months of the termination of the
previous action.  However, Judge Daniels "assume[d], without deciding, that a grant of leave to
re-serve would enable Plaintiff to effect timely service on Christina for purposes of CPLR
§ 205(a)."  *Id.* at *4.

### 3. The 2020 Petition for Pre-Action Discovery

On June 15, 2020, Ames filed a Petition for Pre-Action Discovery in New York State Supreme Court, pursuant to CPLR § 3102(c), based on the same fraudulent-conveyance theory. Def. MTD Mem. at 10; Dkt. 22 ("Pl. MTD Opp'n") at 3.  On September 14, 2020, Justice Engoron dismissed the petition.  Pl. MTD Opp'n at 4.  On October 12, 2020, Ames filed a notice of appeal of that dismissal.  *Id.*

### C. Procedural History of this Action

On July 8, 2020, Ames filed the complaint in this action—his fourth fraudulent-conveyance action against Christina—in New York State Supreme Court in Manhattan.  Dkt. 1-1 ("Compl.").  On August 21, 2020 Christina removed the case to this Court, based on diversity jurisdiction.  Dkt. 1.  On August 26, 2020, Christina moved to dismiss under Rule 12(b)(6). Dkt. 5.  The same day, the Court issued an order, which, *inter alia*, gave Ames until September 16, 2020, to file any amended complaint in response to the motion to dismiss.  Dkt. 9.

On September 16, 2020, Ames filed the FAC.  It brings one claim, of constructive fraudulent conveyance under DCL § 273, for the 2008–2009 conveyance of Christina's mortgage proceeds to JDG Entities.  FAC ¶ 109.  It alleges that Christina made the transfer although she was otherwise insolvent at the time and was facing a contingent liability due to Ames's appeal of the 1998 action.  Thus, it alleges, the conveyance was made to protect her from having to pay that debt.  *Id.*

On October 7, 2020, Christina filed a letter stating that she was moving to dismiss the FAC and relying on her previous motion to dismiss.  Dkt. 12.  There, she argues that the FAC is time-barred, barred by *res judicata*, an improper attempt to re-plead the 2018 complaint without leave to do so, and fails to state a claim under DCL § 273 because it fails to adequately allege

insolvency or a transfer for unfair consideration.  Def. MTD Mem. at 15–16.  She further argues that the factual specifics that Ames added to his section 273 claim to address deficiencies noted in earlier dismissals are "blatant lie[s]."  *Id.* at 18.

On October 12, 2020, Christina filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11, Dkt. 14, and a supporting memorandum of law, Dkt. 15 ("Def. Sanctions Mem.").  On November 11, 2020, Ames filed an opposition to the motion to dismiss, Pl. MTD Opp'n, and an opposition to the sanctions motion, Dkt. 24 ("Pl. Sanctions Opp'n").  On December 2, 2020, Christina filed replies in support of dismissal, Dkt. 25 ("MTD Reply"), and sanctions, Dkt. 26 ("Sanctions Reply").  On December 23, 2020, Christina submitted a letter asking the Court to take judicial notice as to certain facts in resolving the motion for sanctions. Dkt. 27.  On January 7, 2021, Ames filed a response.  Dkt. 31.

## II.     Discussion

### A.      Christina's Motion to Dismiss

Christina argues that Ames's fraudulent-conveyance action should be dismissed because it is untimely, barred by *res judicata*, and fails to state a claim.  The Court finds the action time-barred and dismisses it on that ground, without reaching Christina's other arguments.

#### 1.      Applicable Legal Standards

##### a.      *Legal Standards Governing Motions to Dismiss*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where,

8

as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

*b.*   *DCL § 273*[4]

DCL § 273 allows a creditor to allege that a debtor's conveyance was constructively fraudulent. To do so, the creditor, first, must show "that the debtor made the transfer in question without fair consideration." *Ray*, 799 F. App'x at 30.

> A debtor has received "fair consideration" if the following three elements are satisfied: "first, the recipient of the debtor's property must either convey property in exchange or discharge an antecedent debt in exchange; second, such exchange must be a fair equivalent of the property received; and third, such exchange must be in good faith."

*Id.* at 31 (quoting *United States v. Watts*, 786 F.3d 152, 164 (2d Cir. 2015)). The creditor, second, must show that "the transferor is insolvent or will be rendered insolvent by the transfer in question." *Watt*s, 786 F.3d at 164 (quoting *In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005)). A "person is insolvent" under DCL § 273 when "the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." *Id.* (quoting DCL § 271). "The operative reference point for

---

[4] On December 6, 2019, the New York legislature repealed and replaced DCL § 273. *See* 2019 N.Y. Sess. Laws ch. 580. Section 273 is operative here, however, because the new law does "not apply to a transfer made or obligation incurred before [the act's] effective date, [April 4, 2020], nor shall it apply to a right of action that has accrued before such effective date." *Id.*; *see Ray*, 799 F. App'x at 31 n.1.

determining insolvency is the time at which the transfer took place." *Ray III*, 2019 WL 1649981, at *6 (quoting *Kim v. Ji Song Yoo*, 311 F. Supp. 3d 598, 612 (S.D.N.Y. 2018)).

### 2.    This Action Is Time Barred

The statute of limitations for fraudulent-conveyance cases under § 273 is six years. *See Jaliman v. D.H. Blair & Co. Inc*, 105 A.D.3d 646, 647 (1st Dep't 2013) ("New York law provides that a claim for constructive fraud is governed by the six-year limitation set out in CPLR 213(1), and that such a claim arises at the time the fraud or conveyance occurs."). The allegedly fraudulent conveyance at issue here took place in 2008 and 2009. This action was filed in July 2020, far more than six years later. Ames defends his § 273 claim as timely, based on New York's tolling statute, CPLR § 205(a). Ames is correct that the Court is to look to New York state's procedural rules as to statute of limitations. *See 2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*, 717 F. App'x 35, 37 n.1 (2d Cir. 2017) (summary order) ("Federal courts sitting in diversity jurisdiction apply the procedural statute of limitations and choice-of-law rules of the forum state, in this case New York."). But those rules do not make his claim timely.

CPLR § 205(a) provides, in relevant part:

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period. . . .

Ames's argument why this action is timely deploys CPLR § 205(a) not once, but twice. He begins by noting, as is undisputed, that his 2014 Action was timely commenced. His 2018 Action, he admits, would have been untimely on its own terms, insofar as the transfers he

challenged as fraudulent occurred in 2008 and 2009.  However, under CPLR § 205(a), the 2018 Action, as Judge Daniels found, was timely, because it had been brought within six months of the affirmance of the dismissal of the 2014 Action.  Ames then deploys CPLR § 205(a) a second time.  He argues that because his complaint in this action was filed (on June 15, 2020) within six-months of the affirmance of the dismissal (on January 23, 2020) of the 2018 Action, this claim was timely, too, under CPLR § 205(a).  Ames thus argues that CPLR § 205(a) effectively operates as a chain, making each successive lawsuit timely provided that it was filed within six months of the termination of its predecessor (and that the initial action in the chain was timely).

The short answer is that Ames's construction of CPLR § 205(a) is wrong.  It would enable a statute of limitations to be tolled in perpetuity, provided that the frequent-filing plaintiff filed each successive lawsuit within six months of the final termination of its predecessor.  Ames's attempt to use CPLR § 205(a) in this manner to salvage this 2020 lawsuit, his fourth challenging his ex-wife's transfers in 2008 and 2009, is unsustainable.

First, it is at odds with the text of CPLR § 205(a).  The statute's text nowhere authorizes the serial extension of a limitations period for six months each time a plaintiff files a failed lawsuit.  Instead, the statute permits a six-month grace period within which to file a new lawsuit only if "the new action would have been timely commenced at the time of commencement of the prior action."  This clause clearly inquires whether the prior action was commenced within the original limitations period for the claim at issue, not whether, although otherwise untimely, it had been saved by an earlier application of CPLR § 205(a).  That is clear from reading the provision as a whole.  Otherwise, the clause "would have been timely commenced" would wholly duplicate the initial sentence of CPLR § 205(a), which already requires that the prior action was "timely commenced."

Second, so reading CPLR § 205(a) accords with the provision's purpose—while also

vindicating the important purposes served by enforcing a statute of limitations.  As the Second

Circuit has explained:  "The purpose of § 205(a) is to avert unintended and capricious unfairness

by providing that if the first complaint was timely but was dismissed for . . . curable reasons, the

suit may be reinstituted within six months of the dismissal."  *Hakala v Deutsche Bank AG*, 343

F.3d 111, 115 (2d Cir. 2003).  There is, in contrast, little if any productive purpose served by

construing CPLR § 205(a) to permit serial filings in perpetuity, each filed within six months of

the termination of the prior failed action.  Such would undermine the purpose of the statute of

limitations doctrine, which is "to serve the objectives of finality, certainty and predictability."

*Ajdler v. Province of Mendoza*, 33 N.Y.3d 120, 130 n.6 (2019) (cleaned up); *see In re Goldstein

v. N.Y. State Urb. Dev. Corp.* 13 N.Y.3d 511, 545–46 (2009) (Read, J. concurring) ("[N]othing in

the language or the purpose animating CPLR 205(a) suggests that a [party] . . . may take serial

bites at the . . . apple.").

Consistent with this reading, in discussing CPLR § 205(a), courts have often specified that

it allows a plaintiff to file a subsequent action within six months of their "initial" or "first"

action, rather than within six months of *any* successive action.  *See Diffley v. Allied-Signal, Inc.*,

921 F.2d 421, 423 (2d Cir. 1990) ("[Section 205(a)] merely allows the plaintiffs an additional six

months in which to bring another action based on the same occurrences, after their timely initial

complaint was dismissed for procedural defects."); *U.S. Bank Nat'l Ass'n v. DLJ Mortg. Cap.,

Inc.*, 33 N.Y.3d 72, 76 (2019) ("As a general rule, under CPLR 205(a) a subsequent action may

be filed within six months of a non-merits dismissal of the initial timely-filed matter."); *see

George v. Mt. Sinai Hosp.*, 47 N.Y.2d 170, 178–79 (1979) ("The very function of that

subdivision [CPLR § 205(a)] is to provide a second opportunity to the claimant who has failed

the *first time around* because of some error pertaining neither to the claimant's willingness to prosecute in a timely fashion nor to the merits of the underlying claim." (emphasis added)); *Moran v. County of Suffolk*, 189 A.D.3d 1219 (2d Dep't 2020) (explaining that CPLR § 205(a) "saves only those claims that were timely interposed in the first action" (quoting *Louis Food Serv. Corp. v. Dep't of Educ. of the N.Y.C.* 76 A.D.3d 956, 957 (2d Dep't 2010))).  Although these courts were not presented with the same question here, *i.e.*, whether CPLR 205(a) can be deployed multiple times to rescue successive failed lawsuits bringing the same claims, they are consistent in describing CPLR 205(a) as authorizing only one six-month extension to save an otherwise untimely suit.

In light of that construction, the 2020 Action cannot secure a second six-month grace period, and is—extremely—untimely.  That is because the 2018 Action before Judge Daniels was brought years outside the limitations period.  It was permitted to go forward only because of the application to it of CPLR § 205(a)'s six-month grace period.  But a new action—this action—would *not* "have been timely commenced at the time of commencement of the prior action," *i.e.*, the 2018 Action.  On the contrary, absent the grace period available after the termination of the 2014 Action, the 2018 Action would have been brought years too late.

Ames's pattern of serial, similar litigations flowing from events by now long, long ago, in fact supplies an unusually good illustration of the salutary purposes served by construing CPLR § 205(a) as this Court has.  Otherwise, were Ames to bring yet another such action, his fifth, within six months of the affirmance of this Court's dismissal, it, too, would elude the statute of limitations.  The Court accordingly dismisses Ames' claim as time-barred.

B.      **Christina's Motion for Sanctions**

Christina also moves for sanctions against Ames for filing a frivolous complaint, under Federal Rule of Civil Procedure 11.[5]  She argues that Ames's intent in filing this action was to harass her and obtain an improper advantage in the ongoing state-court litigation from the 1998 Action.  Def. Sanctions Mem. at 2.  She asks that Ames be ordered to pay her reasonable costs, including her attorneys' fees incurred in pursuing dismissal of this action, and enjoined from pursuing future frivolous litigation against her, in particular, claiming that she fraudulently conveyed the proceeds of her mortgage.  *Id.*

1.      **Legal Standards Governing Sanctions**

If "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c).  In its discretion, a Court can award such sanctions where the filing is "being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" the claims are "[un]warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and "the factual contentions" lack "evidentiary support."  *Id.* 11(b).  "Such an award serves two ends: it 'vindicat[es] judicial authority,' and it makes the wronged party 'whole for expenses caused by his opponent's obstinacy.'"  *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 2021 WL 968819, at *4 (2d Cir. Mar. 16, 2021) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

---

[5] Rule 11 allows a defendant to move for sanctions provided she has given the plaintiff 21 days' notice, thus allowing it to withdraw its complaint before a sanctions motion is filed.  Fed. R. Civ. P. 11(c)(2).  Christina has done so here.  *See* Dkts. 13, 16.

"Because of its potency, however, a court's inherent power [to sanction] 'must be exercised with restraint and discretion.'" *Id.* at *5 (quoting *Chambers*, 501 U.S. at 44).  When it comes to monetary sanctions, a court should sanction only "'bad faith, vexatious[], [or] wanton[]' acts or actions undertaken for 'oppressive reasons.'"  *Id.* (quoting *Chambers*, 501 U.S. at 45–46).  "[S]eparating frivolous claims from mere zealous advocacy can be difficult," and thus courts are required "to make two findings before imposing such sanctions: first, that 'the challenged claim was without a colorable basis' and, second, that 'the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay.'"  *Id.* (quoting *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012)).  "[B]oth findings 'must be supported by a high degree of specificity in the factual findings.'"  *Enmon*, 675 F.3d at 143 (quoting *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009)).

A claim is without colorable basis when it "lacks any legal or factual basis."  *Wolters Kluwer Fin. Servs.*, 564 F.3d at 114.  "Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim."  *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (quotations omitted).  As to the bad-faith requirement, bad faith "may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay'" or harassment.  *Id.* at 336 (quoting *Shafii v. Brit. Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)).  In determining whether such conduct is sanctionable, a "court should primarily focus on the *intent* of the potentially sanctionable conduct, not on its *effect*."  *Int'l Techs. Mktg.*, 2021 WL 968819, at *5.

2.      **Sanctions Are Not, Yet, Warranted**

Christina argues that sanctions are warranted because multiple courts have found that Ames has failed to plead or establish a viable fraudulent-conveyance claim arising from her transfers of the proceeds from her mortgage.  Def. Sanctions Mem. at 4.  Christina argues that Ames has not pled a colorable claim and that he filed this action against his ex-wife with the purpose of harassing her and to obtain discovery that might assist him in the 1998 Action, which is now awaiting a second trial.  As Christina notes, this is Ames's fourth action making essentially the same fraudulent-transfer claim.  And each time, Ames's claims have foundered.  At the same time, as Ames notes, the dismissals of his prior cases have been without prejudice, and to date he has neither been levied a monetary sanction nor warned that a similar new filing would warrant a sanction.

Although the question is a close one, the Court does not find that Ames's claim was so clearly without a colorable basis or so clearly animated by bad faith to warrant imposition of sanctions at this time.  But the Court now provides the warning missing from prior dismissals in this saga.  Should Ames bring a similar such action, he will be inviting the award of sanctions.

Centrally important here, although the Court has found Ames's claim time-barred, there was not—and Christina did not point to—case law squarely on point that read CPLR § 205(a) to bar a litigant whose prior action would have been untimely without the CPLR § 205(a) six-month grace period from obtaining a second such grace period.  The Court's ruling to that effect instead drew on its construction of the statutory text, supportive but not dispositive case authority, and the purposes of that provision and of statutes of limitations.  *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) ("With respect to legal contentions, the operative question is whether the argument is frivolous, i.e., the

legal position has no chance of success, and there is no reasonable argument to extend, modify or reverse the law as it stands." (cleaned up)).  Although Ames's reading of CPLR § 205(a) was incorrect, the Court does not find it frivolous.

As to whether Ames's complaint states a claim, the Court did not have occasion to reach that issue, given the complaint's untimely nature.  Ames asserts that he has made modest changes to the facts pled in, he states, an attempt to "correct[] prior pleading deficiencies as identified by Judge Daniels."  Pl. Sanctions Opp'n at 4.  On its review, the Court is quite skeptical that Ames's revised claims would satisfy Rule 12(b)(6).  But the Court, having disposed of the case on other grounds, is unprepared to find that the FAC so clearly lacked any "legal and factual support, considered in light of the reasonable beliefs of the individual making the claim," *Schlaifer Nance & Co.*, 194 F.3d at 337 (quotations omitted), to merit sanctions, *see* Pl. Sanctions Opp'n at 5; *see also Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387 (2d Cir. 2003) ("'[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness' and is not based on the subjective beliefs of the person making the statement." (quoting *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000))).

Separately, as to the element of bad faith, while Ames's litigiousness towards Christina and others[6] raises obvious concerns that his motives are malignant, the cases on which she relies are distinguishable.  There, sanctions for baseless litigation were imposed on plaintiffs who persisted in filing complaints after having already been warned that their claims were barred

---

[6] As Christina notes, Ames has also sued her former attorney.  That now-dismissed action, she argues, was an "attempt to divert the time and resources of Christina's attorneys away from the 1998 Action."  Def. Sanctions Mem. at 11.  In December 2018, Ames filed an action against his own attorneys in connection with the 2014 Action brought against Christina.  *Id*.  Christina also points to a tax case that Ames has filed, but that case appears unrelated to the instant disputes.

17

and/or that future litigation would expose them to sanctions.  *See* Def. Sanctions Mem. at 15

(citing, *e.g.*, *Vishipco Line v. Charles Schwab & Co.*, No. 02 Civ. 7915 (SHS), 2003 WL 1345229,

at *11 (S.D.N.Y. Mar. 19, 2003)).  No such warning has been given to Ames to date—until

today.

In pursuing sanctions, Christina asks that Ames be enjoined from bringing further suits

against Christina claiming fraudulent transfers of the proceeds of her mortgage.  Def. Sanctions

Mem. at 18.  Although the Court will not impose a filing injunction, its holding that the claims to

this effect are time-barred, upon affirmance, should effectively block any such new lawsuit by

Ames.  The Court's admonition that sanctions are apt to be imposed in the event of such a bid,

too, should be a potent deterrent.

In addition, although Ames does not seek leave to amend, the Court *sua sponte* declines

to grant him leave to amend.  Because Ames's claim is time-barred, "granting leave to amend

would be futile," *Esposito v. Chestnut*, No. 18 Civ. 11245 (PGG), 2020 WL 4586308, at *4

(S.D.N.Y. Aug. 10, 2020).  And when the Court previously granted Ames leave to amend, it

warned him that "no further opportunities to amend will ordinary be granted."  Dkt. 9; *see also*

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (explaining that it is

"within the sound discretion of the district court to grant or deny leave to amend").  "Nor has

[Ames] given any indication that he is in possession of facts that would cure the problems

identified above*.*"  *Farooq v. N.Y.C. Health & Hosps. Corp.*, No. 19 Civ. 6294 (JMF), 2020 WL

5018387, at *11 (S.D.N.Y. Aug. 25, 2020) (quotations omitted).

The Court is confident that Ames, and any attorney on his behalf, will get the message

intended by this decision.  Enough is enough.  Further lawsuits along these lines are apt to be

found frivolous, vexatious, and meriting sanctions.

18

**CONCLUSION**

For the foregoing reasons, the Court dismisses Ames Ray's Amended Complaint, with prejudice, and denies Christina Ray's motion for sanctions.  The Clerk of Court is respectfully directed to terminate the motions pending at dockets 5 and 14, and to terminate this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 25, 2021
      New York, New York